# IN THE COURT OF APPEALS OF IOWA

No. 15-0440
Filed November 23, 2016

**SETH RAYMOND SNYDER and MEGHAN LEA SNYDER,**
Plaintiffs-Appellees,

**vs.**

**MICHAEL T. BAKER,**
Defendant-Appellant,

_____

Appeal from the Iowa District Court for Jefferson County, John G. Linn, Judge.

The defendant appeals from the district court's dismissal of his counterclaim for damages. **AFFIRMED.**

Michael Baker, Douds, pro se appellant.

Lucas C. Helling and Vanessa M.Y. Willman of Foss, Kuiken & Cochran, P.C., Fairfield, for appellees.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The plaintiffs, Seth and Meghan Snyder, filed an action for specific performance, asking the district court to order the defendant, Michael Baker, to transfer title to real estate subject to a purchase agreement that had been entered into by the parties on June 23, 2014. The court ordered specific performance of the contract. Baker filed a counterclaim for damages for breach of contract, which the court dismissed in its entirety. Baker appeals from the dismissal of his counterclaim.

**I. Background Facts and Proceedings.**

The plaintiffs entered into a farm lease with Baker on June 6, 2014, which allowed the plaintiffs to farm fifty-eight acres of Baker's land. The lease provided that the plaintiffs would pay Baker $10,150 in rent yearly. But if "a purchase agreement is signed and land is purchased within 60 days of this contract, the contract will be void and cash rent applied to purchase." A handwritten note at the bottom of the lease stated, "Cash rent to be paid by 8-6-14 or before closing."

On June 23, 2014, the parties entered into an agreement for the plaintiffs to purchase 111 acres of real estate—including the land the plaintiffs were renting—for a purchase price of $316,350. The written agreement does not include a closing date, but it is undisputed the parties set August 6 as the date to do so.

The plaintiffs and Baker attended the closing as scheduled, but Baker refused to complete the process that day. At trial, Baker testified he refused to close because he was concerned Seth had farmed outside of the boundaries Seth had certified with the Farm Service Agency (FSA), and Baker was

concerned he would be "on the hook" for any resulting penalties. Baker did not voice these concerns to the plaintiffs on the day of closing. Rather, it appears Baker first raised the issue in an August 19 letter from his attorney.

The plaintiffs filed their action for specific performance in September. A couple of weeks later, they filed a motion for summary judgment, which the district court granted on November 14. Baker was ordered to specifically perform all of the obligations required under the real estate sales agreement by no later than January 9, 2015. The court left open for later resolution the plaintiffs' request to be awarded attorney fees and their claim they were entitled to a credit of $10,150 based on the terms of the farm lease.

Baker filed a counterclaim on December 1, 2014. He claimed he was still owed a money judgment for $10,150 in rent, $1000 for adjoining farmland he claimed was damage by chemicals used by Seth, and $824 in reimbursement for farm equipment Baker rented when he was unable to reach his own due to "overfarming" by Seth. The plaintiffs resisted, noting they had "tendered full payment to purchase the 111 acres by the deadline of August 6, 2014," and "said purchase price included the rent payment of $10,150." They denied damaging the grassland and blocking access to Baker's equipment. A hearing was held on the matter on December 30, 2014.

In February 2015, the district court dismissed Baker's entire counterclaim. In doing so, it gave the plaintiffs credit for $10,150 in rent and denied Baker's claims for the cost of the rental of the bean head and the lost hay production.[1]

---

[1] Baker does not appeal the district court's dismissal of his claim for $1000 for chemical damage and the resulting loss of hay.

Additionally, the parties' written contract allowed for the recovery of reasonable attorney fees for the prevailing party, and the court ordered Baker to pay $3000 of plaintiffs' fees as well as the costs of the action.

Baker appeals.

## II. Standard of Review.

"Claims based on a contract that are tried at law are reviewed for correction of errors at law." *Meincke v. Nw. Bank & Trust Co.*, 756 N.W.2d 223, 227 (Iowa 2008). We are bound by the district court's findings of fact if they are supported by substantial evidence. *Id.*

## II. Discussion.

Baker maintains the district court erred in its determination the plaintiffs did not violate the farm lease agreement by refusing to pay the $10,150 in rent in addition to the complete purchase price of the land. He asserts the rent was still due because he was justified in delaying the close of the real estate purchase.

The district court explicitly found that Baker's stated reason for delaying the close date past the 60-day window when the rent would be applied to the purchase price was not credible. We agree. Baker claimed he refused to close because he had not had time to verify possible repercussions for Seth's sodbusting[2] before the closing was scheduled to take place. However, he admits that he did not tell the plaintiffs, his attorney, or their attorney about his concerns

---

[2] At trial, Seth admitted that after the intended closing but before trial, he learned he had planted .43 acres that were outside of the area he certified to the FSA. He testified that he had spoken to the local FSA office and was assured that there would be no action taken for such a negligible amount of overfarming. Still, before the trial commenced, the plaintiffs' attorney sent Baker a letter agreeing the plaintiffs "hold your client harmless from any and all CRP penalties which he may incur as a result of their alleged overfarming of the subject real estate."

either before or at closing. He also did not contact the local FSA office to discuss his concerns. In fact, his first mention of sodbusting appears to have occurred in an August 19 letter from his attorney to the plaintiffs—almost two weeks after the aborted closing. At trial, Baker testified he first had the concerns in late July, but he had no explanation for why he had not contacted his attorney—who he conceded was available during that time period—or anyone else[3] about the issue.

Because the plaintiffs had taken all necessary steps to close the real estate sale within the sixty days contemplated by the farm rental agreement, and Baker had no credible reason for the delay as of the scheduled closing on August 6, the district court did not err in determining the plaintiffs were excused from making the additional cash rent payment.

Baker also maintains the district court erred in its determination that the plaintiffs were not responsible for reimbursing the cost he incurred to rent a bean head. Baker argues his bean head was in a shed on the property that he could not get to without damaging part of Seth's crop. As the district court noted, the farm lease agreement gave Baker the right to ingress and egress over the property, so he could have entered the property to regain his bean head at any time. Additionally, the plaintiffs' attorney sent Baker a letter on October 1— approximately one week before Baker rented the equipment—stating the plaintiffs would work with him to get his bean head out of the shed. On appeal,

---

[3] Baker testified that he had told his wife about his concerns in late July. She did not testify at trial.

Baker continues to explain why he did not take the option of using his own bean head. This is not a legal argument for our review.

Last, the plaintiffs request an award of appellate attorney fees. The purchase agreement signed by the parties includes a provision stating, "Buyers and Sellers are also entitled to utilize any and all other remedies or actions at law or in equity available to them, and the prevailing party shall by entitled to obtain judgment for costs and attorney fees." Additionally, Iowa Code section 625.22 (2013) provides: "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court." We have previously applied this section to an award of appellate attorney fees. *See, e.g.*, *Fed. Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 70 (Iowa 1992) (noting the prevailing party "is entitled to appellate attorney fees because the attorney fee language in the note does not prohibit such fees"); *Eskenazi* v. *Essential Healthcare Res., Inc.*, No. 03-0854, 2004 WL 795941, at *3 (Iowa Ct. App. Apr. 14, 2004) (awarding appellate attorney fees of $4200). Here, we award the plaintiffs $2000 in appellate attorney fees.

**IV. Conclusion.**

Because substantial evidence supports the district court's findings, and we find no error in the district court's dismissal of Baker's counterclaim for damages, we affirm. We award the plaintiffs $2000 in appellate attorney fees.

**AFFIRMED.**